**MISSOURI–KANSAS–TEXAS RAILROAD COMPANY, Appellant,**

v.

**Clarence WAGNER, Appellee.**

**No. 4387.**

Court of Civil Appeals of Texas.

Waco.

Jan. 20, 1966.

Rehearing Denied March 17, 1966.

Naman, Howell, Smith & Chase, Louis Muldrow, Waco, for appellant.

John B. Faulkner, Jones, Boyd, Westbrook & Lovelace, Waco, for appellee.

TIREY, Justice.

Plaintiff brought the action against the railroad for damages for personal injuries arising out of an automobile-train collision at a rural crossing approximately 12 miles from the City of Waco and from the City of West. A jury verdict resulted in damages being awarded against the railroad. It is our view that the controlling facts are without dispute. The collision occurred around 10:20 P.M., at a point where the farm road 1858 crosses the railroad track near Tokio in McLennan County, Texas. Plaintiff was the sole occupant of his automobile and it collided with the lighted caboose of defendant's train while the train was moving across the crossing. The caboose was the 40th and last car of the train, and the impact knocked the caboose from the tracks. The track and the public highway were substantially level at the crossing and crossed at a 90 degree angle. The highway was straight in the immediate vicinity of the crossing; however, the plaintiff had come out of a very gentle 4 degree curve some 300 to 400 feet before reaching the crossing. There was only one track, and the train was moving across the track at approximately 15 to 18 miles per hour. The crossing was equipped with standard statutory cross-arm signs on each side of the track, there being no automatic or elec-

tric devices. Plaintiff was familiar with the crossing. He had lived in the community 39 years, and had driven the road at least twice per day for many years. Plaintiff contended that he didn't see the train on the crossing until it was too late to avoid the collision. He was driving with his lights on dim and it does not appear just when he realized that the crossing was occupied by the train, but his skid marks were plainly visible for a distance of 66 feet before he struck the caboose. This particular farm road connects the Gholson Road and the town of West in McLennan County. The area served by the road is sparsely settled, and that area is generally open country and there were no houses near the crossing and the traffic on both the roadway and the railroad was light. The accident happened on Monday, March 2, 1964, and plaintiff said there was no other traffic on the roadway around the crossing when the accident happened. Only two trains crossed the crossing each 24 hours; one train goes north and one comes back. Appellee said the road was substantially level on both sides of the crossing. The highway right-of-way in the vicinity of the crossing is 100 feet wide; was open, clear and unobstructed; that the improved shoulder and roadway were 32.5 feet wide. The road was virtually straight for a distance of approximately 308 feet; there were no other lights or distractions in the area to create any illusion of an unobstructed track. Plaintiff said that there was no other traffic on the roadway around the crossing either in front of him or behind him; that there were no lights from any houses and no lights from any cars that he could see, and no lights of cars approaching him from the opposite direction on the other side of the crossing. Appellee was on his way home from the town of West, and some distance back from the railroad track he saw a round highway sign with a black "X" on it, and that the sign was there when the accident happened; that at the railroad crossing, both on the side from which he was approaching, and on the other side of the crossing, there was a cross-arm sign; that it was a high metal

sign painted white with the reflectors on the cross-arms; that the cross-arm signs were there on the night of the accident; that as he approached the crossing at the time of the accident he saw the railroad sign back up on the highway, and that he could see the cross-arms signs, and that he knew he was approaching the railroad track; that he had not lost his direction, and that he knew where he was on the road. Plaintiff had been traveling over this crossing twice a day for some several years. He testified he knew that the crossing did not have any red lights or bells, or anything like that.

There is an absence of testimony to the effect that the crossing was in bad repair, and there was no obstruction on the highway between plaintiff and the train. The crossing was substantially level with the highway. The train consisted of two diesel engines and 39 cars and the caboose, and was approximately 1900 feet long.

Plaintiff went to trial on his first amended petition and his first supplemental petition. Plaintiff grounded his cause of action on the following specific acts of negligence:

"(a) In failing to ring a bell or blow a whistle to warn plaintiff at the crossing in violation of Article 6371 V.A.C.S. of the State of Texas;

(b) In failing to use ordinary care to warn plaintiff of said train at the time and on the occasion in question;

(c) In failing to place lights upon the caboose of said train;

(d) In failing to place reflectors of light upon the sides of the flat bed cars.

(e) In failing to place a sign near said crossing to give plaintiff notice of the proximity of the railroad in violation of Article 6370 V.A.C.S. of the State of Texas.

(f) In failing to place fuzees near said crossing to warn plaintiff of said freight train at the time and on the occasion in question;

(g) In failing to place lights upon the front of the caboose;

(h) In failing to place lights upon the flat bed cars in question."

Defendant went to trial on its first amended original answer, which included a general denial and several special pleas of contributory negligence. Defendant specially plead:

"The plaintiff failed to stop at the crossing in question in accordance with and in violation of Article 6701d, § 86(d), Texas Revised Civil Statutes, which states: 'Whenever any person driving a vehicle approaches a railroad grade crossing, the driver of such vehicle shall stop within 50 feet but not less than 15 feet from the nearest rail of such railroad and shall not proceed until he can do so safely when: (d) an approaching train is plainly visible and is in hazardous proximity to such crossing.' "

The Court overruled defendant's motion for judgment notwithstanding the verdict, and granted plaintiff's motion for judgment and decreed that plaintiff recover the sum of $34,525.00.

The judgment is assailed on 72 points. Point 1 is to the effect that the crossing at the time and on the occasion in question, was not extrahazardous. Point 2 is to the effect that there is no evidence to support the jury's answer to Special Issue 13. Special Issue 13 is:

"Do you find from a preponderance of the evidence that at the time and place of the collision in question the railroad crossing concerned was an extrahazardous crossing as a nighttime crossing?

"By the term 'extra hazardous crossing' is meant a particular crossing which is shown to be more than ordinarily dan-gerous, one attended with unusual or extra hazards, as a nighttime crossing, a crossing so peculiarly dangerous that prudent person cannot use the same with safety unless extraordinary means are used to protect such crossing.", to which the jury answered "Yes".

That the railroad knew it, and further answered that the railroad knew, or by the exercise of ordinary care, should have known that the crossing at nighttime was extrahazardous, and that it had failed to equip said crossing with automatic warning lights, and that such was negligence and a proximate cause of the collision.

Points 3 and 4 are to the effect that the evidence is insufficient to support the jury's answer to Issue 13, and Point 5 is that the answer is against the great weight and preponderance of the evidence.

We sustain each of the foregoing points for reasons hereinafter briefly stated.

Our Supreme Court in Fort Worth and Denver Ry. Co. v. Williams, 375 S.W.2d 279, point p. 283, recently said:

"Whether or not any given state of facts describing the surroundings of any particular crossing are such as to mark such crossing as one attended with unusual danger or extraordinary hazard is a question solely for the determination of the jury, unless only one conclusion could be drawn therefrom by all reasonable minds."

We have heretofore detailed the factual situation with reference to the crossing and we are of the view that reasonable minds cannot honestly reach a conclusion that the crossing was an extrahazardous nighttime crossing. We think there is no testimony that it was an extrahazardous crossing. The crossing was being occupied by a moving train in its regular course of business, crossing the highway, and there was nothing in the line of vision between the plaintiff and the railroad to obstruct the plaintiff's view. He had his lights on

dim and he saw the train at some distance, more than 66 feet from the railroad, because the skid marks on his car extended back a distance of 66 feet from the railroad. Therefore, his lights picked up the train moving across the road at some point back from the time he applied his brakes. There is an absence of testimony to show what distance that was, but in all events he was 66 feet from the nearest rail of the track when he applied his brakes.

Going back to the jury verdict, perhaps we should say that it convicted the railroad of three acts of negligence and found that each was a proximate cause of the collision. They are to the effect: (1) that the railroad failed to equip the sides of its flat bed cars with reflectors; (2) that it failed to equip the crossing with automatic signal devices; and (3) that it failed to sound its whistle or horn 80 rods from the crossing. As we have stated before, it is our view that there is no evidence that the crossing was extrahazardous, and that there is certainly no evidence that the railroad had any knowledge of any facts or circumstances to the effect that such crossing was extrahazardous, and since we have stated that because we are of the view that such crossing was not extrahazardous, there was no duty on the railroad to take extraordinary means to protect the public at the crossing by automatic signal devices or reflectors on the sides of its cars. We are of the view that the failure to sound the horn could not have been a proximate cause of the collision.

As we understand the Stratton case (Tex. & N. O. R. Co. v. Stratton, Tex.Civ.App., 74 S.W.2d 741, w. ref.) and under the undisputed factual situation here, the railroad was not guilty of negligence proximately causing the collision in not having other signs and lights and giving other signals to warn persons approaching the crossing of the slowly moving train across the highway. The presence of the train itself was suf-

ficient warning. In the Stratton case we find these significant statements:

"Appellant was not guilty of negligence, proximately causing the collision, in not having other signs and lights and giving other signals to warn persons approaching the crossing of the slowly moving train across the highway; the presence of the train itself was sufficient warning.

\* \* \* \* \* \*

"With reference to the ringing of the bell and the blowing of the whistle, these signals are required for the purpose of giving warning of the approach of trains and not of the presence of a train. Travelers have no right to rely upon such signals for the purpose of determining whether or not the highway is blocked by the presence of a train."

There is not a scintilla of evidence that there was any obstruction or anything between plaintiff and the train to obstruct plaintiff's vision except a little fog and darkness, and the evidence is without dispute, and the jury found, that the caboose had lights on it. In the Stratton case the facts are very similar to the case at bar and the Court said in effect that the railroad was not guilty of negligence proximately causing the collision in not having other signs and lights and giving other signals to warn persons approaching the crossing of a slowly moving train across the highway; that *the presence of the train itself was sufficient warning.* Our view is that under the undisputed factual situation each of the grounds of negligence alleged by plaintiff were foreclosed against him under the doctrine announced in the Stratton case, and that plaintiff was guilty of negligence as a matter of law in running into the caboose.

Under the views here expressed each of appellant's other points become immaterial and pass out of the case.

Reversed and rendered.